IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **BETHANY ANN ALEXANDER,** *Plaintiff* | : : : | **CIVIL ACTION** |
| v. | : : | |
| **FAIR ACRES GERIATRIC CENTER** *et al.*, *Defendants* | : : | **No. 20-2550** |

## MEMORANDUM

PRATTER, J.                                                                                                   MAY 25, 2021

Bethany Ann Alexander brings this wrongful death and survival action in her capacity as administratrix of the estate of her mother, Karen Ann Houpt. Ms. Houpt was a resident of Fair Acres Geriatric Center ("Fair Acres"),[1] who passed away due to sepsis, malnutrition, and dehydration. Ms. Alexander brings six claims against Fair Acres and Dr. Richard M. DiMonte, Jr., D.O., including two § 1983 claims against Fair Acres for wrongful death and survival, two counts of medical negligence against Fair Acres, and two counts of medical negligence against Dr. DiMonte. Fair Acres and Dr. DiMonte filed motions to dismiss. Ms. Alexander also filed a motion for leave to file a second amended complaint. For the reasons that follow, the motions to dismiss will be granted in part and denied in part.

### BACKGROUND

The Amended Complaint alleges the following facts, which are assumed to be true at the motion to dismiss stage. Fair Acres is a nursing home in Lima, Pennsylvania, and is owned and operated by the County of Delaware. Karen Ann Houpt was discharged to Fair Acres on July 2,

---

[1]     Fair Acres Geriatric Center is owned and operated by the County of Delaware. For simplicity, this memorandum refers to both entities collectively as "Fair Acres."

1

2018, from Moss Rehab Elkins Park Acutecare. While at Moss Rehab, Ms. Houpt received treatment for multiple conditions, including a pulmonary embolism. During the course of that treatment, Ms. Houpt lost a substantial amount of weight, and had developed four pressure ulcers (sometimes called "bedsores").

When Ms. Houpt was discharged to Fair Acres, she weighed either 196 or 202 pounds.[2] At this time she had no pressure ulcers, though her medical chart did note a history of them.

Over the ensuing months, Ms. Houpt continued to lose weight. Her weight was 175 pounds on October 10, 2018, and 166 pounds on January 9, 2019. Her January 9 chart noted that this was a 35 pound decrease over the last six months. Ms. Houpt's pressure ulcers also resurfaced after she was admitted to Fair Acres. On July 20, 2018—18 days after she was admitted—Ms. Houpt developed an "unstageable" pressure ulcer on her sacral area. By January 10, 2019, she had developed nine pressure ulcers.

Ms. Alexander alleges that even though Fair Acres staff witnessed Ms. Houpt's alarming decrease in weight and the development of pressure ulcers at various points on her body, they failed to take reasonable and medically necessary steps to help her. For example, Ms. Alexander alleges that Fair Acres staff should have monitored Ms. Houpt's food intake, prescribed her dietary supplements, and referred her to a dietary professional to identify the cause of her weight loss. Ms. Alexander also alleges that Fair Acres staff failed to take steps to address Ms. Houpt's pressure ulcers, including by failing to reposition Ms. Houpt periodically, failing to properly treat the sores, failing to prescribe antibiotics to address the infections, failing to develop a care plan, and failing to request care for Ms. Houpt from an infectious disease or wound care specialist.

---

[2] Based on the Amended Complaint, it seems that there was a discrepancy between Moss Rehab's records, which showed that Ms. Houpt weighed 196 pounds on discharge, and Fair Acres' records, which showed that she weighed 202 pounds when she was admitted.

2

Ms. Alexander even alleges that Fair Acres concealed the extent of Ms. Houpt's injuries from her family and failed to timely refer her to a hospital once it was clear that she required emergency care.

On January 10, 2019, Ms. Houpt was discharged from Fair Acres, though the complaint does not specify where she was discharged to. Approximately three weeks later, Ms. Houpt died. Ms. Alexander alleges that Ms. Houpt's death was due to infection and necrosis of the tissue surrounding the nine pressure ulcers, which resulted in sepsis. Ms. Alexander also alleges that Ms. Houpt's death was caused by weight loss, malnutrition, and dehydration. Ms. Alexander alleges that during her time at Fair Acres, Ms. Houpt suffered extreme physical pain, mental and emotional anguish, and that she ultimately suffered a premature death. Ms. Alexander alleges that Ms. Houpt's premature death and unnecessary suffering were caused by Fair Acres' policy and custom of "understaffing" and failing to give adequate medical care to its residents.

## LEGAL STANDARD

A Rule 12(b)(6) motion to dismiss tests the sufficiency of a complaint. Although Rule 8 of the Federal Rules of Civil Procedure requires only "a short and plain statement of the claim showing that the pleader is entitled to relief," Fed. R. Civ. P. 8(a)(2), "to 'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests,'" the plaintiff must provide "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do," *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (citation omitted) (alteration in original).

To survive a motion to dismiss, the plaintiff must plead "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Specifically, "[f]actual allegations must be enough

to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555. In evaluating the sufficiency of a complaint, the Court adheres to certain well-recognized parameters. For one, the Court "must consider only those facts alleged in the complaint and accept all of the allegations as true." *ALA, Inc. v. CCAIR, Inc.*, 29 F.3d 855, 859 (3d Cir. 1994); *see also Twombly*, 550 U.S. at 555 (stating that courts must "assum[e] that all the allegations in the complaint are true (even if doubtful in fact)"); *Mayer v. Belichick*, 605 F.3d 223, 230 (3d Cir. 2010) ("[A] court must consider only the complaint, exhibits attached to the complaint, matters of public record, as well as undisputedly authentic documents if the complainant's claims are based upon these documents."). Also, the Court must accept as true all reasonable inferences emanating from the allegations, and view those facts and inferences in the light most favorable to the nonmoving party. *See Rocks v. City of Phila.*, 868 F.2d 644, 645 (3d Cir. 1989); *see also Revell v. Port Auth. of N.Y. & N.J.*, 598 F.3d 128, 134 (3d Cir. 2010).

That admonition does not demand that the Court ignore or discount reality. The Court "need not accept as true unsupported conclusions and unwarranted inferences," *Doug Grant, Inc. v. Greate Bay Casino Corp.*, 232 F.3d 173, 183-84 (3d Cir. 2000) (citations and internal quotation marks omitted), and "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions. Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678; *see also Morse v. Lower Merion Sch. Dist.*, 132 F.3d 902, 906 (3d Cir. 1997) (explaining that a court need not accept a plaintiff's "bald assertions" or "legal conclusions" (citations omitted)). If a claim "is vulnerable to 12(b)(6) dismissal, a district court must permit a curative amendment, unless an amendment would be inequitable or futile." *Phillips v. Cty. of Allegheny*, 515 F.3d 224, 236 (3d Cir. 2008).

## DISCUSSION

### I. Section 1983 Liability (Counts I and II)

Fair Acres moves to dismiss Counts I and II of the Amended Complaint, which allege that Fair Acres, as a governmental organization, is liable for wrongful death and survival under 42 U.S.C. § 1983. Fair Acres argues that Ms. Alexander's § 1983 claims should be dismissed for two reasons. First, it argues that the federal statutes and regulations that Ms. Alexander alleges Fair Acres violated do not create an "individual right" that can be remedied through a § 1983 claim. Second, Fair Acres argues that Ms. Alexander has not alleged facts sufficient to support a claim that Fair Acres acted with "deliberate indifference," as required for a § 1983 claim against a municipality.

Fair Acres' first argument is without merit because, as even Fair Acres acknowledges, it is directly at odds with the holding in *Grammer v. John J. Kane Regional Centers-Glen Hazel*, 570 F.3d 520, 532 (3d Cir. 2009). In *Grammer*, the Third Circuit Court of Appeals applied the test the U.S. Supreme Court has prescribed for determining whether Congress intended for a statute to confer "individual rights," such that injured parties may sue for noncompliance via § 1983. *Id.* at 525-26 (citing *Blessing v. Freestone*, 520 U.S. 329 (1997); *Gonzaga Univ. v. Doe*, 536 U.S. 273 (2002)). It concluded that the Federal Nursing Home Reform Amendments ("FNHRA"), which sets out standards of care that medical facilities receiving federal funds must comply with, does "confer individual rights that are presumptively enforceable through § 1983." *Grammer*, 570 F.3d at 532. Fair Acres argues at length that *Grammer* was wrongly decided, advancing much the same argument as the *Grammer* dissent. But even if the Court was persuaded by Fair Acres' argument, *Grammer* is binding precedent.

Fair Acres' second argument is that the Amended Complaint does not sufficiently allege deliberate indifference. There are three circumstances in which "the acts of a government

5

employee may be deemed to be the result of a policy or custom of the governmental entity for whom the employee works, thereby rendering the entity liable under § 1983." *Robinson v. Fair Acres Geriatric Ctr.*, 722 F. App'x 194, 198 (3d Cir. 2018) (quoting *Natale v. Camden Cty. Corr. Facility*, 318 F.3d 575, 584 (3d Cir. 2003)). Only one is relevant here: "the policymaker has failed to act affirmatively at all, [though] the need to take some action to control the agents of the government is 'so obvious, and the inadequacy of existing practice so likely to result in the violation of constitutional rights, that the policymaker can reasonably be said to have been deliberately indifferent to the need.'" *Natale*, 318 F.3d at 584 (quoting *Bd. of Cty. Comm'rs of Bryant Cnty., Okla. v. Brown*, 520 U.S. 397, 417 (1997) (Souter, J., dissenting)). To prove deliberate indifference, Ms. Alexander must show that Fair Acres "continued [to adhere] to an approach that they know or should know has failed to prevent tortious conduct by employees." *Id.* (quoting *Bryan Cty.*, 520 U.S. at 407). "Additionally, 'for liability to attach in this circumstance, the identified deficiency in a [municipality's] training program must be closely related to the ultimate injury.'" *Id.* (quoting *City of Canton v. Harris*, 489 U.S. 378, 391 (1989)).

Ms. Alexander's allegations meet this burden. Ms. Alexander alleges that Ms. Houpt was in "stable condition" when she arrived at Fair Acres, though she had mobility issues and depended on Fair Acres' staff for help with bathing, dressing, and the like. But during her stay at Fair Acres, her weight continued to drop, and she did not receive sufficient nutrition and medical attention. Moreover, Ms. Alexander alleges that Ms. Houpt's continuously worsening pressure ulcers were often ignored, and even actively concealed, as Fair Acres staff failed to help Ms. Houpt by repositioning her periodically, treating the open wounds, administering antibiotics, and calling for specialist care. Indeed, where a bedridden patient develops bedsores that become infected, slowly destroying portions of a patient's skin and underlying tissue as infections set in, to the point that

6

the patient dies of sepsis—an immune response to infection in the body—it is natural to infer that the care provider was deliberately indifferent to the patient's needs. This is particularly so where, as here, the patient's health allegedly declined over a considerable period of time, giving medical staff repeated opportunities to notice her worsening health. Medical staff actually noticed these issues, as documented by the multiple medical charts listing her decreasing weight and increasing number of infected pressure ulcers. Such a knowing disregard meets the deliberate indifference requirement for § 1983 liability.[3] Of course, whether these allegations will be substantiated through discovery is another matter, but at this stage the Court must deny Fair Acres' motion to dismiss.

## II. Motion to Dismiss Costs of Suit and Attorneys' Fees

Fair Acres argues that there is "no applicable statute which would require [it] to pay Ms. Alexander's counsel fees and costs." But as Ms. Alexander points out, § 1983 does allow this. Although in most cases the presumption is that attorneys' fees and the costs of suit are borne by each party, with § 1983 litigation the presumption is flipped. In these cases, a plaintiff will "ordinarily recover an attorney's fee unless special circumstances would render such an award unjust." *Curran v. Se. Pa. Transp. Auth.*, 109 F. Supp. 2d 394, 396 (E.D. Pa. 2000) (quoting *Newman v. Piggie Park Enters., Inc.*, 390 U.S. 400, 402 (1968)). Therefore, the Court denies Fair Acres' motion to strike Ms. Alexander's claim for costs of suit and attorneys' fees at this time.

---

[3] Other courts, faced with similar allegations, have held likewise. *See Robinson*, 722 F. App'x at 198 (plaintiff sufficiently demonstrated that Fair Acres Geriatric Center showed deliberate indifference to decedent by failing to address systematic problems with infection control); *Thomas v. Cty. of Chester, Pocopson Home*, 312 F. Supp. 3d 448, 454-55 (E.D. Pa. 2018) (denying motion to dismiss where decedent underwent dramatic weight loss, but nursing home staff failed to address eating and drinking problems).

7

### III. Motion to Strike Exhibit B to the Amended Complaint

Fair Acres argues that Exhibit B to Ms. Alexander's Amended Complaint should be stricken, citing Federal Rule of Civil Procedure 12(f). Exhibit B contains a variety of Pennsylvania Department of Health survey reports, which record the results of inspections at Fair Acres Geriatric Center between 2015 and 2018.

To prevail on a 12(f) motion, "the moving party must demonstrate that 'the allegations have no possible relation to the controversy and may cause prejudice to one of the parties, or [that] the allegations confuse the issues.'" *Aetna Inc. v. Insys Therapeutics, Inc.*, 324 F. Supp. 3d 541, 560 (E.D. Pa. 2018) (alteration in original) (quoting *DeLa Cruz v. Piccari Press*, 521 F. Supp. 2d 424, 428-29 (E.D. Pa. 2007)). Fair Acres does not argue that the survey reports confuse the issues. Therefore, the Court considers two questions: are the survey reports irrelevant and, if so, do they cause any prejudice to Fair Acres?

Fair Acres argues that the survey reports are irrelevant for two reasons. First, it points out that some of the surveys concern events that occurred when the decedent was not a resident of Fair Acres. Second, it argues that survey reports are a "closed loop," because Fair Acres was required to remedy all deficiencies noted in these reports in order to maintain certification and funding. Ms. Alexander responds that the survey reports are relevant because they substantiate Ms. Alexander's claim that Fair Acres had a policy and custom of neglecting its residents.

The Court has reviewed Exhibit B and concludes that some of the survey results are arguably relevant to Ms. Alexander's allegations, while others are quite clearly not. For example, a full five pages of Exhibit B recount an episode in which a resident, who was suffering from Parkinson's disease, was smoking cigarettes on a balcony and accidently lit himself or herself on fire, causing burns to the neck, ears, and face. The health department concluded that all current residents with smoking privileges should be reassessed, and additional policies were put in place

to supervise smoking. This event occurred on February 17, 2015, more than three years before Ms. Houpt became a resident of Fair Acres. Such an event is too remote and distinct from the allegations in the Amended Complaint, both in time and in the nature of the alleged failure to provide care. But other surveys are more pertinent. For example, one entry showed that in 2017, the health department concluded that despite evidence of one resident's precipitous weight loss, Fair Acres failed to properly intervene to ensure that the resident was receiving adequate nutrition.

Even if some portions of Exhibit B are not relevant, Fair Acres must also show that it would be prejudiced by the inclusion of this evidence. For example, a moving party may show prejudice by demonstrating that the irrelevant pleadings are "so lengthy and complex that it places an undue burden on the responding party," *Doe v. Armstrong*, No. 18-cv-1263, 2018 WL 10811467, at *1 (E.D. Pa. July 19, 2018) (quoting *Karpov v. Karpov*, 307 F.R.D. 345, 348 (D. Del. 2015)), or where the language is scandalous in that it "reflect[s] cruelly upon the [other party's] moral character, use[s] repulsive language, or detract[s] from the dignity of the court," *United States v. Viola*, No. 99-cr-586-1, 2003 WL 21545108, at *2 (E.D. Pa. July 7, 2003) (alteration in original) (quoting *Lawrence v. City of Bethlehem*, No. 97-CV-1824, 1998 WL 964214, at *4 (E.D. Pa. Oct. 30, 1998)).

Fair Acres makes neither of these arguments. Instead, it argues that it is prejudiced by these exhibits because it has been "deprived of the opportunity to challenge the relevance of any of the survey reports." The Court cannot see how this is the case. Fair Acres can object to the introduction of irrelevant material at trial. The fact that an exhibit was attached to the complaint does not impede Fair Acres' ability to do so later at trial (or even at summary judgment). To the extent that Fair Acres is arguing that it cannot make a relevancy argument now, that is also false. In fact, that is exactly what Rule 12(f) enables Fair Acres to do: to object to the relevance of

material in the other party's allegations. But it is not enough for Fair Acres to argue that the material is irrelevant. It must also show prejudice. Because Fair Acres has not done so, the Court will deny its motion to strike.

### IV. Motion to Strike Language Regarding Negligence Against Dr. DiMonte

Dr. DiMonte also moves to strike material from paragraphs 112 and 136 of Ms. Alexander's pleading, arguing that it "sets forth vague, non-specific, and open-ended allegations of negligence." But, as noted above, to prevail on a 12(f) motion, the moving party must show that the evidence is irrelevant and would cause prejudice. Dr. DiMonte does not argue that this material is irrelevant or that its inclusion would prejudice him. Therefore, the Court denies Dr. DiMonte's motion to strike.

### V. Motion to Dismiss Punitive Damages

Dr. DiMonte moves to dismiss Ms. Alexander's claim for punitive damages, arguing that the factual allegations are insufficient as a matter of Pennsylvania law to plead that Dr. DiMonte showed "reckless indifference" towards Ms. Houpt. Dr. DiMonte is correct. Pennsylvania law requires a more onerous state of mind requirement for recklessness than federal law does for § 1983 claims. Whereas for § 1983 actions it is enough to show that a defendant knew or should have known of a risk, *see Robinson*, 722 F. App'x at 199, Pennsylvania law requires that a defendant "deliberately proceed[] to act, or fail to act, in conscious disregard of" a "high degree of risk of physical harm to another," *Hutchison ex rel. Hutchison v. Luddy*, 870 A.2d 766, 771 (Pa. 2005). Accordingly, where a plaintiff fails to "plead sufficient facts to show Defendants' state of mind," a motion to dismiss punitive damages must be granted. *Carson v. Tucker*, No. 5:20-cv-00399, 2020 WL 1953655, at *7 (E.D. Pa. Apr. 23, 2020).

Ms. Alexander's Amended Complaint does not include any allegations about Dr. DiMonte's mental state. It simply lists a variety of actions that Dr. DiMonte failed to take.

10

The closest the Amended Complaint comes to alleging a mental state is at the conclusion of each count against Dr. DiMonte, where the complaint alleges that he acted "manifesting a wanton and reckless disregard of the rights of [Ms. Houpt]." But this is a legal conclusion, not an allegation of Dr. DiMonte's mental state, and, accordingly, it need not be considered on a motion to dismiss. *See Iqbal*, 556 U.S. at 678 ("[T]he tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions."). Therefore, the Court will grant Dr. DiMonte's motion to dismiss punitive damages without prejudice[4] to Ms. Alexander's right to amend the complaint to allege additional facts in support of its claim if warranted.[5]

## VI. Unopposed Arguments

Finally, Fair Acres and Dr. DiMonte each raised an argument that Ms. Alexander did not respond to in her initial briefing. After the Court called for additional briefing, Ms. Alexander notified the Court that she does not contest Fair Acres' argument that Counts III and IV of the Amended Complaint are barred by governmental immunity, or that certain language[6] should be stricken from paragraphs 112 and 136 of the Amended Complaint. Therefore, the Court will grant Fair Acres and Dr. DiMonte's motions to dismiss on these points as unopposed.

---

[4] The Court notes that Ms. Alexander did file a motion for leave to file a second amended complaint. However, none of the proposed amendments would change the Court's decision to dismiss Ms. Alexander's claim for punitive damages. Instead, Ms. Alexander sought to file these amendments to further allege conduct that would render Fair Acres liable under § 1983. But because the Court is denying Fair Acres' motion to dismiss as to Counts I and II, Ms. Alexander's motion for leave to file a second amended complaint will be dismissed as moot.

[5] Although Fair Acres did not move to dismiss punitive damages against it, the Court notes that "[p]unitive damages are not available against a municipality under § 1983." *Townsend v. City of Chester*, No. CV 19-1023, 2020 WL 4347368, at *15 (E.D. Pa. July 29, 2020) (citing *City of Newport v. Fact Concerts, Inc.*, 453 U.S. 247, 271 (1981)). Therefore, Ms. Alexander will likely be unable to recover punitive damages against Fair Acres.

[6] The language in question is: "acting directly and/or by and through his employees, servants, agents, ostensible agents and work persons."

11

## CONCLUSION

For the reasons that follow, the Court will grant defendants' motions to dismiss in part and deny them in part. An appropriate order follows.

BY THE COURT:

_____
GENE E.K. PRATTER
UNITED STATES DISTRICT JUDGE