IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| BETHANY ANN ALEXANDER, | : | |
| Administratrix of the Estate of Karen Ann | : | CIVIL ACTION |
| Houpt, Deceased, | : | |
| *Plaintiff* | : | |
| | : | |
| v. | : | |
| | : | |
| FAIR ACRES GERIATRIC CENTER *et al.*, | : | No. 20-2550 |
| *Defendants* | : | |

## MEMORANDUM

PRATTER, J.                                                             JUNE 22, 2023

Fair Acres Geriatric Center moves for summary judgment on a wrongful death and a

survival action brought under 42 U.S.C. § 1983 by Bethany Ann Alexander relating to the death

of her mother, Karen Ann Houpt, who died shortly after being released from Fair Acres' care. For

the reasons set forth below, the Court will deny in part and grant in part the motion.

### BACKGROUND

Bethany Ann Alexander is the daughter of Karen Ann Houpt and Administratrix of her

Estate. Ms. Houpt was a patient at Fair Acres Geriatric Center, a nursing home owned and operated

by the County of Delaware. Ms. Alexander alleges that Fair Acres neglected its duties to provide

reasonable and adequate care to Ms. Houpt, which allegedly caused Ms. Houpt to sustain injuries

including pressure sores, bruises, infection, malnourishment, dehydration, weight loss, and death.

Ms. Alexander also alleges that Fair Acres' care plan was inadequate, inaccurate, or incomplete,

resulting in Ms. Houpt's care needs not being met.

When Ms. Houpt began her care at Fair Acres, she weighed 196 or 202 pounds and had no

pressure ulcers, though her medical chart did indicate a history of them. While at Fair Acres, Ms.

Houpt continuously lost weight and developed nine pressure ulcers. Ms. Alexander alleges that

1

even though Fair Acres staff witnessed Ms. Houpt's weight loss and her development of pressure ulcers, they did not take medically necessary steps to help her, nor did they try to determine the cause of these issues. Three weeks after Ms. Houpt was discharged from Fair Acres, she died. Ms. Houpt's death was due to infection and necrosis of the tissue surrounding the nine pressure ulcers, which resulted in sepsis. Ms. Alexander alleges that during her time at Fair Acres, Ms. Houpt suffered extreme physical pain and mental and emotional anguish. She alleges that Ms. Houpt suffered a premature death as a result of Fair Acres' policy and custom of understaffing and failing to give adequate medical care to its resident.

Ms. Alexander filed suit against Fair Acres, among others, asserting causes of action relating to her mother's death. At this stage in the litigation, only two claims remain: a wrongful death and a survival claim under 42 U.S.C. § 1983. Fair Acres filed a motion for summary judgment as to these two claims. The motion, having now been extensively briefed, is ripe for resolution.

## LEGAL STANDARD

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). An issue is "genuine" if there is a sufficient evidentiary basis on which a reasonable jury could return a verdict for the non-moving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A factual dispute is "material" if it "might affect the outcome of the suit under the governing law." *Id.* "On a motion for summary judgment, facts must be viewed in the light most favorable to the nonmoving party only if there is a genuine dispute as to those facts." *Ricci v. DeStefano*, 557 U.S. 557, 586 (2009) (internal quotation marks omitted). The moving party has the initial burden of demonstrating the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).

Summary judgment must be granted "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Id.* at 322. More than the "mere existence of a scintilla of evidence in support of the [non-moving party's] position" must be presented. *Anderson, Inc.*, 477 U.S. at 252. Where the Court determines that there are no genuine issues of material fact as to a necessary element of the claim, it should grant summary judgment. *Celotex*, 477 U.S. at 322.

DISCUSSION

The extensive briefing on Fair Acres' motion for summary judgment centers around three primary issues: (1) whether Fair Acres presents a new legal issue in its motion for summary judgment regarding Ms. Alexander's understaffing § 1983 claim; (2) whether a genuine dispute of material fact exists as to Ms. Alexander's understaffing and failure to train causes of action; and (3) whether or not Ms. Alexander can bring a wrongful death claim under § 1983. The Court will address each argument in turn.

## I.    Law of the Case Doctrine

"The law of the case doctrine directs courts to refrain from re-deciding issues that were resolved earlier in the litigation. The doctrine applies 'as much to the decisions of a coordinate court in the same case as to a court's own decisions.'" *Public Interest Research Grp. of New Jersey, Inc. v. Magnesium Elektron*, 123 F.3d 111, 116 (3d Cir. 1997) (quoting *Christianson v. Cold Indus. Operating Corp.*, 486 U.S. 800, 816 (1988)). "Law of the case rules have developed to maintain consistency and avoid reconsideration of matters once decided during the course of a single continuing lawsuit." *Id.* (citation omitted).

Ms. Alexander argues that the law of the case doctrine applies because the arguments asserted in Fair Acres' motion for summary judgment were decided by the Court at the motion to dismiss stage. Specifically, she argues that Fair Acres cannot argue that understaffing is an

3

improper basis for a § 1983 claim because the Court already concluded that the Amended Complaint sufficiently plead deliberate indifference to sustain the § 1983 claims. In ruling on the motion to dismiss, the Court summarized Fair Acres' argument as follows:

> Fair Acres argues that Ms. Alexander's § 1983 claims should be dismissed for two reasons. First, it argues that the federal statutes and regulations that Ms. Alexander alleges Fair Acres violated do not create an "individual right" that can be remedied through a § 1983 claim. Second, Fair Acres argues that Ms. Alexander has not alleged facts sufficient to support a claim that Fair Acres acted with "deliberate indifference," as required for a § 1983 claim against a municipality.

*Alexander v. Fair Acres Geriatric Ctr.*, No. 20-cv-2550, 2021 WL 2138794, at *3 (E.D. Pa. May 26, 2021). The Court concluded that the first argument was "without merit because . . . it is directly at odds with the holding in *Grammer v. John J. Kane Regional Centers-Glen Hazel*, 570 F.3d 520, 532 (3d Cir. 2009)." *Alexander*, 2021 WL 2138794, at *3. In *Grammer*, the Third Circuit Court of Appeals "concluded that the Federal Nursing Home Reform Amendments ("FNHRA"), which sets out standards of care that medical facilities receiving federal funds must comply with, does 'confer individual rights that are presumptively enforceable through § 1983.'" *Id.* (quoting *Grammer*, 570 F.3d at 532). As to the second argument, the Court concluded that Ms. Alexander alleged deliberate indifference because she showed that Fair Acres "continued [to adhere] to an approach that they [knew] or should [have] know[n] has failed to prevent tortious conduct by employees," and that the alleged deficiency was "closely related to the injury." *Alexander*, 2021 WL 2138794, at *3 (quoting *Natale v. Camden Cnty. Corr. Facility*, 318 F.3d 575, 584 (3d Cir. 2003)). The Court concluded that "[s]uch a knowing disregard meets the deliberate indifference requirement for § 1983 liability." *Id.*

Fair Acres avers that its motion for summary judgment is predicated on different legal grounds than those asserted in its motion to dismiss, specifically, that *understaffing* cannot serve as a sufficient basis for Ms. Alexander's § 1983 claims, not that Ms. Alexander's § 1983 claims

4

are insufficiently plead. Fair Acres argues that in resolving the motion to dismiss, the Court only addressed whether the FNHRA created individual rights enforceable via § 1983, and whether Ms. Alexander adequately pled deliberate indifference. It argues that the Court's conclusion that the FNHRA convey individual rights enforceable through § 1983 does not resolve its present argument regarding understaffing because no statutory provision under the FNHRA conveys an individual right to specific staffing levels. Further, it notes that the Court narrowed its holding regarding the allegations of deliberate indifference, stating that "whether these allegations will be substantiated through discovery is another matter, but at this stage the Court must deny Fair Acres' motion to dismiss." *Alexander*, 2021 WL 2138794, at *3.

Here, the law of the case doctrine does not apply because the legal issues resolved at the motion to dismiss stage involved different legal questions than those asserted in Fair Acres' motion for summary judgment, and the Court has yet to address whether understaffing can properly serve as a basis for Ms. Alexander's § 1983 claim.

## II.     Section 1983 Claims

"42 U.S.C. § 1983 is a vehicle for imposing liability against anyone who, under color of state law, deprives a person of rights, privileges, or immunities secured by the Constitution and laws." *Grammer*, 570 F.3d at 525 (internal quotation marks omitted). Critical to the success of a § 1983 claim is the deprivation of a federally protected right. *See Robinson v. Fair Acres Geriatric Ctr.*, 722 F. App'x 194, 197 (3d Cir. 2018). The FNHRA "confer individual rights that are presumptively enforceable through § 1983." *Grammar*, 570 F.3d at 532; *accord Health & Hosp. Corp. of Marion Cnty. v. Talevski*, No. 21-cv-806, 2023 WL 3872515, at *3 (U.S. June 8, 2023) ("We hold that the two FNHRA provisions at issue here do unambiguously create §1983-

enforceable rights.").[1] Thus, one can properly bring a claim under § 1983 for alleged violations of the FNHRA.

## A.    Theories of Liability Under Section 1983

Municipalities "can be sued directly under § 1983 . . . where . . . the action that is alleged to be unconstitutional implements or executes a policy, statement, ordinance, regulation, or decision officially adopted and promulgated by that body's officers." *Monell v. Dep't of Social Servs. of City of New York*, 436 U.S. 658, 690 (1978). Because Fair Acres is owned and operated by the County of Delaware, it is a municipality that can be subject to § 1983 liability under *Monell*.

"[A] municipality cannot be held liable *solely* because it employs a tortfeasor—or, in other words, a municipality cannot be held liable under § 1983 on a *respondeat superior* theory." *Monell*, 436 U.S. at 691 (emphasis in original). "For Fair Acres to be held liable under § 1983, the alleged violation of [the plaintiff's] rights must have been *caused by action taken pursuant to a municipal policy or custom*." *Robinson*, 722 F. App'x at 198 (emphasis added). "There are three situations where acts of a government employee may be deemed to be the result of a policy or custom of the governmental entity for whom the employee works, thereby rendering the entity liable under § 1983." *Natale*, 318 F.3d at 584. Only one is relevant here: "the policymaker has failed to act affirmatively at all, [though] the need to take some action to control the agents of the government 'is so obvious, and the inadequacy [of existing practice] so likely to result in the violation of constitutional rights, that the policymake[r] . . . can reasonably be said to have been deliberately

---

[1]    In *Talevski*, the Supreme Court held that 42 U.S.C. §§ 1369r(c)(1)(A)(ii), 1369r(c)(2)(A)-(B) create individual rights enforceable under 42 U.S.C. § 1983. 2023 WL 3872515, at *3. "The test for unambiguous conferral is satisfied where the provision in question is phrased in terms of the persons benefited and contains rights-creating, individual-centric language with an unmistakable focus on the benefited class." *Id.* at *9 (quoting *Gonzaga Univ. v. Doe*, 536 U.S. 273, 284, 287 (2002)). The FNHRA provisions at issue satisfied this test because they are set forth under § 1369r(c) concerning "requirements relating to residents' rights," and the language of the provisions refers to the rights of the nursing home residents. *Id.* at *10.

indifferent to the need.'" *Bd. of Cty. Comm'rs of Bryan Cnty. Okla. v. Brown*, 520 U.S. 397, 417 (1997) (Souter, J., dissenting) (quoting *Canton v. Harris*, 489 U.S. 378, 390 (1989)). To prove deliberate indifference, Ms. Alexander must show that Fair Acres "continued [to adhere] to an approach that they know or should know has failed to prevent tortious conduct by employees." *Id.* at 407. "[F]or liability to attach in this circumstance the identified deficiency in a [municipality's] training program must be closely related to the ultimate injury." *Canton*, 489 U.S. at 391.

Here, the Court must evaluate Ms. Alexander's understaffing and failure to train theories of liability to determine whether she has established deliberate indifference.

### 1. Inadequate Staffing

To succeed on a claim for inadequate staffing, the plaintiff must demonstrate how the staffing was "insufficient in numbers or quality," and how this alleged inadequate staffing was a proximate cause of the alleged injuries. *Robinson*, 722 F. App'x at 199. In *Robinson*, the Third Circuit Court of Appeals observed that the plaintiff had alleged inadequate staffing "without ever pleading how the staff members were insufficient in numbers or quality or how that would have been clearer to [the facility]'s administrators." *Id.* The plaintiff also failed to "adequately plead how a lack of nursing staff—or even registered nursing staff—caused her injuries." *Id.* The plaintiff only "alleged that her care was inadequate; she did not allege that staff members were not available or were present too infrequently, for example." *Id.* Thus, the Third Circuit concluded that understaffing could not serve as a basis for the plaintiff's § 1983 claims. *Id.* However, *Robinson*, which was decided at the motion to dismiss stage based on *insufficient pleadings*, does not foreclose the possibility that understaffing *could* serve as the basis for a *Monell* claim. *See Ellis v. Del. Cnty.*, No. 20-cv-6175, 2021 WL 1614401, at *4 (E.D. Pa. April 26, 2021) (noting that the Third Circuit in *Robinson* "did not hold that such allegations could never support a § 1983 claim").

Here, unlike in *Robinson*, Ms. Alexander has produced evidence tending to show that the number of nursing staff was inadequate and that the insufficient staffing resulted in the provision of a lower quality of care to Fair Acres' residents. Thus, Ms. Alexander has satisfied her burden of establishing that there is a genuine dispute of material fact as to whether (1) the staff members at Fair Acres were actually insufficient in numbers, (2) that facility staff at Fair Acres knew about the insufficient staffing, and (3) that Fair Acres' understaffing caused Ms. Houpt's injuries.

For example, according to Fair Acres' staffing report, its RN staffing while Ms. Houpt was a patient was below the expected staffing levels calculated by the Centers for Medicare & Medicaid Services ("CMS"). CMS has identified a relationship between nursing staff ratios and quality of care, implying that Fair Acres' quality of care could have been affected by its lower-than-expected staffing numbers. Further, Sharmaine Perkins, a CNA at Fair Acres and one of Ms. Houpt's caretakers, testified that Fair Acres "never really had enough staff to be able to properly take care of the residents as they should;" that "[s]he had too many patients to provide quality care at times;" and that she did not feel "there was enough staff to properly care for residents a lot of times between May of 2018 and February of 2020." Pl.'s Suppl. Br. in Opp'n to Def.'s Mot. for Summ. J., at 8. Finally, Ms. Alexander's expert, Kathleen A. Hill-O'Neill DNP, RN, CRNP, NHA, concluded that Fair Acres did not have adequate staffing to meet the needs of the residents. On the other hand, another of Ms. Alexander's experts, Valerie Gray, CPA, testified that Fair Acres was above CMS's expected hours and had received high ratings from CMS. Additionally, Ms. Gray and Casey Kaminski, RN—the Director of Nursing during Ms. Houpt's residency—testified that it was Fair Acres' policy to exceed expected nursing hours.

It is evident, based on the contradictory facts set forth above regarding staffing levels at Fair Acres and the impact of staffing on quality of care, that a genuine dispute of material fact

8

exists, making summary judgment inappropriate on Ms. Alexander's understaffing claim. Because there is a genuine dispute of material fact as to whether the staffing at Fair Acres was inadequate and whether Fair Acres' understaffing caused Ms. Houpt's injuries, the Court denies Fair Acres' motion for summary judgment as to Ms. Alexander's § 1983 claims based on understaffing.

### 2.  Failure to Train and/or Supervise

To succeed on a failure to train claim, a plaintiff must show "that in light of the duties assigned to . . . employees the need for more or different training is so obvious, and the inadequacy so likely to result in the violation of constitutional rights, that the policymakers of the [municipality] can reasonably be said to have been deliberately indifferent to the need." *Canton*, 489 U.S. at 390. "This requires a showing of the policymakers' 'continued adherence to an approach that they know or should know has failed to prevent tortious conduct by employees.'" *Robinson*, 722 F. App'x at 199 (quoting *Bryan Cnty.*, 420 U.S. at 407). Further, "for liability to attach in this circumstance the identified deficiency in a [municipality's] training program must be closely related to the ultimate injury." *Canton*, 489 U.S. at 391.

As it relates to nursing home facilities, the Third Circuit Court of Appeals has held that deficiency citations from regulators may serve as evidence of a failure to train. *See Robinson*, 722 F. App'x at 199–200. In *Robinson*, the Third Circuit concluded that a plaintiff's "allegations regarding the number and character of deficiency citations issued to [defendant] by federal and state regulators" met the standard of showing that "the need for more or different training is so obvious, and the inadequacy so likely to result in the violation of constitutional rights, that the policymakers . . . can reasonably be said to have been deliberately indifferent to the need." *Id.* at 199. Further, "the inadequacy of training [could] plausibly be inferred from [the plaintiff's]

9

allegations regarding the number and character of deficiency citations issued to [the facility] by federal and state regulators." *Id.* at 199–200.

In asserting her failure to train theory, Ms. Alexander notes, among other things, that while Ms. Houpt was a patient, Fair Acres received 19 deficiency citations from the Pennsylvania Department of Health and Human Services. The deficiency citations relate to Fair Acres' training and supervision of its employees and demonstrate that Fair Acres' employees failed to implement residents' care plans, failed to provide services by qualified persons in accordance with the care plans, failed to provide care and services for the highest level of well-being, and failed to ensure that residents maintained acceptable parameters of nutritional status and weight. It is plausible that a reasonable jury could infer inadequate training by Fair Acres based on these deficiency citations. *See Robinson*, 722 F. App'x at 199–200.

The Court finds that there is a genuine dispute of material fact here because Ms. Alexander has presented sufficient evidence from which a reasonable jury could find that Fair Acres failed to train and/or supervise its employees. *See Anderson*, 477 U.S. at 248. For these reasons, the Court denies Fair Acres' motion for summary judgment as to the § 1983 claims based on Fair Acres' failure to train and/or supervise its employees.

### III.    Wrongful Death Action Under Section 1983

Ms. Alexander also brings a wrongful death action under § 1983. Wrongful death actions allow the decedent's spouse, children, or parents to "recover damages for the death of an individual caused by the wrongful act or neglect or unlawful violence or negligence of another." 42 Pa. Cons. Stat. § 8301. A wrongful death action is not a continuation of the rights of the deceased, but rather is a new cause of action to allow the family members of the deceased to vindicate *their* rights. *See Massey v. Fair Acres Geriatric Ctr.*, 881 F. Supp. 2d 663, 670 (E.D. Pa. 2012) (providing that an action under the Pennsylvania Wrongful Death Statute "does not compensate the decedent—it

compensates the survivors for damages which they have sustained as a result of the decedent's death.") (internal quotation marks omitted). This distinction is critical for the § 1983 analysis because typically, "a litigant may only assert his own constitutional rights" because "one cannot sue for the deprivation of another's civil rights." *O'Malley v. Brierley*, 477 F.2d 785, 789 (3d Cir. 1973) (citing *United States v. Raines*, 362 U.S. 17, 22 (1960); *McGowan v. Maryland*, 366 U.S. 420, 429 (1961)).

While *O'Malley* concludes that generally, a plaintiff lacks standing to enforce the civil rights of another person, there is a dispute among the district courts in the Third Circuit regarding the extent to which *O'Malley* is controlling as to § 1983 wrongful death actions. *See e.g., Becker v. Carbon Cnty.*, 177 F. Supp. 3d 841, 853 (M.D. Pa. 2016) ("I am not convinced that *O'Malley* forecloses the reliance on Pennsylvania's wrongful death act into a measure of damages for the violation of a decedent's rights."); *Moyer v. Berks Heim Nursing Home*, No. 13-cv-4497, 2014 WL 1096043, at *4 (E.D. Pa. Mar. 20, 2014) (allowing a § 1983 wrongful death action to proceed at the motion to dismiss stage); *Massey v. Fair Acres Geriatric Ctr.*, 881 F. Supp. 2d 663, 670 (E.D. Pa. 2012) (concluding that plaintiff could not bring a wrongful death claim under § 1983 because "remedies for a wrongful death do not afford redress for deprivations of [the decedent's] federal rights . . . [thus], plaintiff [] individually has no standing to vindicate his mother's civil rights."). This is due, in part, to the lack of guidance from the Third Circuit regarding such claims. *See Moyer*, 2014 WL 1096043, at *4.

Here, the Court finds the reasoning set forth in *Massey* persuasive and consistent with *O'Malley*. *Massey*, 881 F. Supp. 2d at 669–70. In *Massey*, the plaintiff brought a wrongful death action against Fair Acres relating to the death of his mother. *Id.* at 665–66. The plaintiff's "complaint assert[ed that] a § 1983 claim is maintainable through the 'mechanism' of a state-law

11

claim for wrongful death under 42 Pa.C.S.A. § 8301." *Id.* at 669. However, the district court concluded that this position was mistaken because the plaintiff was not asserting his *own* rights to a wrongful death remedy but was instead alleging *his mother's* "civil rights under § 1983 in the guise of a state-law claim for wrongful death under Section 8301." *Id.* The court stated that

> [t]his position conflates the provisions of federal and state statutes that set out different remedies to redress different injuries for different claimants. In Pennsylvania, a wrongful death action . . . does not compensate the decedent—it compensates the survivors for damages which they have sustained as a result of the decedent's death. These remedies for a wrongful death do not afford redress for deprivations of [the decedent's] federal rights. In any event, plaintiff . . . individually has no standing to vindicate his mother's civil rights. *See, e.g., O'Malley*, 477 F.2d at 789 & n. 2 (one cannot sue for deprivation of another's civil rights).

*Id.* at 669–70 (internal quotation marks and citations omitted).

Here, the Court will follow *Massey*, and not *Becker* or *Moyer*, and conclude that Ms. Alexander cannot assert a § 1983 wrongful death action. *See Massey*, 881 F. Supp. 2d at 669–70. The Court will therefore grant Fair Acres' motion for summary judgment as to Ms. Alexander's § 1983 wrongful death claim.

## CONCLUSION

For all of these reasons, the Court will deny in part and grant in part Fair Acres' motion for summary judgment. An appropriate order follows.

BY THE COURT:

GENE E.K. PRATTER
UNITED STATES DISTRICT JUDGE

12